Johnnie GILBERT, Horace Walters, Andrew Lockhart and Billy O'Donald, Appellants,

v.

CITY OF LITTLE ROCK, ARKANSAS; the Civil Service Commission of the City of Little Rock, Arkansas; Walter E. "Sonny" Simpson, Individually and in his official capacity as Chief of Police of the City of Little Rock, Arkansas; and Carlton E. McMullin, Individually and in his official capacity as City Manager of the City of Little Rock, Arkansas, Appellees.

No. 85-1823.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1986.

Decided Aug. 28, 1986.

Rehearing and Rehearing En Banc Denied Oct. 30, 1986.

Phillip J. Duncan, Little Rock, Ark., for appellants.

Philip K. Lyon, Little Rock, Ark., for appellees.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

HEANEY, Circuit Judge.

Eleven black police officers appeal from a district court judgment dismissing their Title VII complaint alleging racially discriminatory promotion policies. We reverse.

## I. BACKGROUND

On September 27, 1978, Johnnie Gilbert, Horace Walters, Andrew Lockhart, and Billy O'Donald filed a complaint in district court against the City of Little Rock, the Civil Service Commission (CSC),[1] and Walter E. "Sonny" Simpson, alleging racial discrimination by the Little Rock Police Department (LRPD), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f).[2] On February 22, 1979, Julius Bryant, Jack Matlock, Maxie Alexander, Grady Anthony, Marcella Wilson, Finis Lowe,[3] Jessie Briscoe, and Larry Brazzelle filed a motion to intervene and a complaint. Plaintiffs and intervenors (appellants) charged LRPD with racial harassment and with discriminatory disciplinary and promotion policies, and sought injunctive relief and compensatory and punitive damages. The district court found that there was neither intentional discrimination nor disparate impact against appellants and dismissed their complaints. *Gilbert v. City of Little Rock*, 544 F.Supp. 1231, 1261 (E.D. Ark.1982) (*Gilbert I*). On appeal, this Court affirmed the district court on the harassment and discipline issues and remanded on the promotion issue. *Gilbert v. City of Little Rock*, 722 F.2d 1390 (8th Cir.1983) (*Gilbert II*). On remand, the district court once again dismissed the promotion complaint. *Gilbert v. City of Little Rock*, No. LR–78–340 (E.D.Ark. filed June 7, 1985) (*Gilbert III*). This appeal followed.

1. On October 17, 1978, plaintiffs filed an amended complaint dropping the CSC as a defendant.

2. Although appellants alleged other causes of action in their complaints, the trial and original appeal centered around Title VII allegations. Accordingly, our discussion and analysis will focus on this cause of action. For a discussion

## II. DISCUSSION

Because this is the second time the promotion issue has come before this Court, this discussion will draw heavily from our first opinion.

In *Gilbert I*, the district court found that although the appellants had made a prima facie showing that LRPD's promotional process had a disparate impact on the black officers, LRPD successfully rebutted the accuracy and significance of appellants' statistical evidence. The district court compared the average composite, oral, and service scores and concluded that none of the subparts of the promotional process had an adverse impact on appellants.

In *Gilbert II*, this Court disagreed with the district court's analysis:

Data presented at trial regarding the testing procedures for promotion to sergeant reveals that * * * the passing rate for the black candidates taking the written examination was comparable to that of the white candidates. * * * It was primarily based on these statistics that the district court concluded the testing procedure did not have a disparate impact on black officers seeking promotion.

The critical factor in being promoted, however, was not to be placed on the list, but to be placed at a high standing on the list. This is especially critical in view of the fact that the certified lists automatically expired at the end of one year. * * *

By failing to focus on the ranking aspect of the promotional system, the district court neglected to adequately consider the interrelationship of the component factors and, more specifically, whether the oral interview and performance appraisal factors, which accounted for between 40%–50% of a candidate's composite score, had a disparate impact

of the other causes of action alleged, *see Gilbert v. City of Little Rock*, 544 F.Supp. 1231, 1236–38 (E.D.Ark.1982).

3. At the close of plaintiffs' and intervenors' case, a nonsuit was taken as to Lowe's individual case.

on black officers' scores, and thus on their rank on the list. *It is not sufficient for such a determination to compare the average scores of whites and blacks on these subparts of the procedure.* Rather, the correlation between scores on the written exam on the one hand and on the oral exam, performance appraisal, and chief's rating on the other needs to be examined. Thus, if there is a low correlation, *i.e.* those blacks scoring high on the written exam do not score as relatively high on the other components, these other components would operate in a racially disparate manner. * * *

*Id.* at 1396–98 (emphasis added; citations and footnotes omitted).

We went on to note

that all these elements of the promotional process, the oral interview, the performance appraisals, the chief's rating, and the relative weight of each component involve decisions made by white supervisors on the basis of largely subjective criteria and must therefore be closely scrutinized because of their susceptibility to discriminatory abuse.

*Id.* at 1398 (citation omitted).

We found that because the district court had used an incorrect focus in analyzing the statistical evidence and had not considered "the statistical evidence against the background of the evidence on racial harassment at the Little Rock Police Department," *id.*, a remand was necessary.

On remand, the district court once again failed to focus on the "ranking aspect of the promotional system," and the "interrelationship of the component factors." It based its decision on the statistical evidence presented by LRPD, which "compared the average scores of blacks and whites on each component." *See Gilbert III*, mem. op. at 14–17. This was contrary to this

Court's instructions on remand. *See Gilbert II*, 722 F.2d at 1398.

The appellants' statistical evidence on remand was consistent with our directions, in that it focused on the critical factor—achieving a high ranking on the promotion list. Appellants first compared the relative performance of the black and white officers on the various components of the system, concluding that only the oral component adversely affected the black officers. Then, in order to determine the effect of the oral scores on the ranking of the black officers, they compared the "aggregate" scores, which combined the written, seniority, and, where applicable, performance appraisal points with the oral scores. For purposes of comparison, they divided the officers into six subgroups based on their average scores—an upper one-third, middle one-third, and lower one-third of both blacks and whites. Comparing the oral scores with the aggregate scores for each subgroup, appellants found that "the only subgroup whose 'aggregate' score was reduced by its oral score was the upper blacks." *Gilbert III*, mem. op. at 3. They concluded that the oral component of the promotion process eliminated the only black officers with a reasonable chance of promotion.

The district court dismissed the appellants' statistical evidence, finding that the appellants' use of subgroups instead of focusing on the entire group of candidates was a critical error. It also criticized their comparison of oral scores with an aggregate score, instead of comparing only the oral and written scores. An examination of the statistical evidence [4] reveals, however, that broadening the comparison group to include the forty officers who received scores of at least ninety percent (a weighted score of thirty-six points),[5] and narrowing the comparison to just the writ-

---

**4.** *See* Officers' 1978 Scores and Rankings (Appendix I).

**5.** This is a reasonable cut-off point. Although, theoretically, anyone receiving a passing score of seventy percent (twenty-eight weighted points) on the written exam was eligible for promotion, as we pointed out in *Gilbert II*, the

critical factor in being promoted was not merely to get on the promotion list, but to get a high rank on the list. For example, in 1978, the officers who were promoted to sergeant all received written scores of at least ninety-two percent (36.8 weighted points).

ten and oral scores only strengthens appellants' case.

Using the broader comparison group shows that, in 1978, on the basis of just the written exam, the white officers' average rank was twenty-first, while the black officers' average rank was eighth. When the oral exam scores are added to the written scores, the average rank of the white officers is twentieth, while that of the black officers is twenty-second. Thus, because of the oral exam, the white officers, on average, went up one rank, while the black officers, on average, went down fourteen ranks.[6]

Not only did the district court rely on evidence that did not adequately address the ranking aspect of the promotional system, it did not closely scrutinize "the statis-

tical evidence against the background of the evidence on racial harassment," as directed by this Court. *See Gilbert II,* 722 F.2d at 1398.[7] Although evidence of discrimination not made the basis of a timely charge "would have no present legal consequences * * *, it may constitute relevant background evidence in a proceeding in which the status of a practice within the relevant time period is at issue." *Id.* at 1397 n. 7; *see United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). Despite the fact that the district court recognized that "statistical evidence should be closely scrutinized where employment decisions are made by white supervisors based on largely subjective criteria," *Gilbert III,* mem. op. at 7, it stated that "the racial incidents occurred over a long period and were not

---

**6.** This disparity underscores the necessity of looking at rankings, as opposed to the scores themselves. On the written exam, the white officers averaged 38.5 weighted points, and the black officers 39.6. On the oral exam, white officers averaged 14.38 weighted points, and the black officers 12.96. The relevance of these apparently small differences is not evident until the effective changes in ranking position are noted.

**7.** Appellees have stipulated that they actively discriminated against blacks prior to 1972. Even after this time, however, the evidence indicates that blacks were treated with something less than equality.

During the years 1975–1979 inclusive, the Little Rock Police Department had approximately 215 uniformed personnel. Approximately 14, or 6.7%, of the force were black. These numbers have remained rather constant. Of the 26 officers promoted to sergeant during this period, one (appellant Anthony) was black. At the time of trial in 1982, one black was employed as a sergeant (appellant Anthony) out of a total of 35 sergeants. None of the force's 14 lieutenants was black, nor were any of the higher ranking officers.
*Gilbert II,* 722 F.2d at 1396.
The only black to ever attain a rank above that of sergeant was Assistant Chief Clarence Hunter, who received his promotion only after intervention by the Civil Service Commission. The year he became Assistant Chief, LRPD created co-assistant positions for the first time, placing a white in the other co-assistant position. Additionally, although Hunter had worked longer at LRPD, the white co-assistant was paid more.

While the district court found that there had been no manipulation of vacancies, and this Court was unable to find this determination

clearly erroneous, this Court was disturbed by the fact that statistical evidence and testimony supported appellants' claim that such manipulations had occurred.

The 1974 sergeant list was effective April 1974–April 1975. One black officer, appellant Gilbert, was on the list. He ranked seventh. Six promotions were made from the list, all in the first four months of the list's life. Thus, the one black candidate on the list was in the highest rank for eight months without being promoted before the list expired. One month later, in May 1975, the next vacancy arose. Appellant Gilbert testified that the white officer whose position became available in May 1975 planned to leave several months earlier but was asked to stay until the certified list for that year expired.
*Id.* at 1397 n. 7.
The district court emphasizes the fact that in 1979 two black officers were promoted to acting sergeant. We observe, however, that these positions were effective for only one year, at which time a new list was made, and that neither subsequently received a permanent promotion. The district court's assumption that, had there not been an unrelated state court order enjoining permanent promotions, those officers would have gotten permanent promotions was pure speculation. Additionally, one of the members of the Civil Service Commission testified that the Commission had intervened to raise their oral test scores due to discrepancies between their written and oral scores.

The continuing use of racial slurs, derogatory epithets, and racial graffiti demonstrate clearly that anti-black sentiment was not confined to the past.

the pattern at the LRPD and not the standard operating procedure," *id.* at 12. It then concluded:

> The Court does not find any evidence introduced at the original trial which would lead to the conclusion that there was a causal connection between these isolated incidents and the results of the subjective components of the promotional process. Most of the incidents occurred before not during the relevant time frame.

*Id.*

This Court, however, did not direct the district court to look for a causal connection, but to closely scrutinize the subjective portions of the promotional process, keeping firmly in mind that LRPD had a history of discrimination and harassment. Although the district court "join[ed] the Appeals Court in condemnation of *any* degree of racial harassment which occurred at the LRPD," *id.*, this Court required more than condemnation. Therefore, the facts that the racial incidents occurred over a long period of time, and that some occurred before the allegedly discriminatory promotion practices, should not have dominated the district court's analysis.

■ Having carefully scrutinized the effect of the oral exam scores on rankings in light of LRPD's history of discrimination and harassment, we find that the oral exam portion of the promotional process had an adverse impact on the black officers. Our inquiry does not end here, however, as the question remains whether Little Rock has shown that the oral exam complies with E.E.O.C. guidelines for determining the validity of selection procedures. *See Firefighters Institute v. City of St. Louis,* 616 F.2d 350, 356 (8th Cir.1980); Uniform Guidelines on Employee Selection Procedure (U.G.E.S.P.), 29 C.F.R. § 1607.3A (1985).

■ LRPD has not demonstrated that the oral exam is valid under the Uniform Guidelines. The district court held that LRPD had established the validity of the oral exam by showing that the exam tested attributes important to the position of ser-

geant, a process known under the guidelines as "content validation." *See Gilbert I,* 544 F.Supp. at 1250; U.G.E.S.P., 29 C.F.R. § 1607.5B (1985). We must disagree with the district court, as LRPD's attempted validation of the oral exam was unsuccessful. Content validation is appropriate where the selection procedure measures tasks constituting a relatively complete sample of those required by the job, that is, for jobs requiring only a few simple tasks. *See* U.G.E.S.P., 29 C.F.R. § 1607.-14C(1) (1985); Bartholet, *Application of Title VII to Jobs in High Places,* 95 Harv. L.Rev. 945, 1016 (1982). Additionally,

> [s]election procedures which purport to measure knowledges, skills, or abilities may in certain circumstances be justified by content validity, although they may not be representative samples, if the knowledge, skill, or ability measured by the selection procedure can be operationally defined as provided in section 14C(4) below, and if that knowledge, skill, or ability is a necessary prerequisite to successful job performance.
>
> A selection procedure based upon inferences about mental processes cannot be supported solely or primarily on the basis of content validity. Thus, a content strategy is not appropriate for demonstrating the validity of selection procedures which purport to measure traits or constructs, such as intelligence, aptitude, personality, commonsense, judgment, leadership, and spatial ability. * * *

U.G.E.S.P., 29 C.F.R. § 1607.14C(1) (1985). Because the oral exam made inferences about mental processes and failed to operationally define the knowledge, skills, and abilities it purportedly measured, LRPD's attempt to justify the exam by content validation failed. Even if content validation were appropriate in this situation, because of the dissimilarity between the oral exam and the actual work situation, empirical evidence of validity would be required. *See Firefighters Institute,* 616 F.2d at 357; U.G.E.S.P., 29 C.F.R. § 1607.-14C(4) (1985) ("As the * * * setting and manner of the administration of the selec-

tion procedure less resemble the work situation, or the result less resembles a work product, the less likely the selection procedure is to be content valid, and the greater the need for other evidence of validity.") Additionally, because the test results were used to rank candidates, LRPD would have to show that the results were associated with different levels of job performance. *See Firefighters Institute,* 616 F.2d at 357; U.G.E.S.P., 29 C.F.R. § 1607.14C(9) (1985). Finally, LRPD would have to show that no alternative procedures would have less adverse impact. *See* U.G.E.S.P., 29 C.F.R. § 1607.3B (1985).

## III. RELIEF

■ In fashioning the relief, we recognize that "Title VII has vested broad equitable powers in the federal courts to fashion a decree which will, so far as possible, eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Paxton v. Union National Bank,* 688 F.2d 552, 572 (8th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983); *see Franks v. Bowman Transportation Co.,* 424 U.S. 747, 763, 96 S.Ct. 1251, 1263–64, 47 L.Ed.2d 444 (1976). Additionally, this Court has stated that victims of discrimination are entitled to "the most complete relief possible," including placement in positions comparable to ones that they were denied, and determination of seniority and other rights as of the date that their rights were violated. *See E.E.O.C. v. M.D. Pneumatics, Inc.,* 779 F.2d 21, 23 (8th Cir.1985).

LRPD may continue to use the current promotional process with the exception of the oral exam. If LRPD wishes to use an oral exam in the future, it must first be validated in compliance with the E.E.O.C. guidelines.[8]

It is left for this Court to determine what individual relief is appropriate. In 1978, eleven promotions were made. Gilbert was ranked eighth before the oral exam and fifteenth after the oral exam. Lockhart was ranked eleventh before and thirty-second after the oral exam.[9] Thus, but for the invalid oral exam, they would have been promoted in 1978. Accordingly, Gilbert and Lockhart are to receive promotions to the next available sergeant positions. Complete relief also requires that they be compensated for lost wages and benefits from the dates they would have been promoted in 1978 had they received the eighth and eleventh promotions, to the dates they actually receive their promotions. This compensation should include any wage and benefit increases they would have received within that period. *See Paxton,* 688 F.2d at 574. Additionally, their seniority standing as sergeants shall be computed from 1978 for purposes of further promotions and other benefits associated with their positions.

In 1979, O'Donald and Walters ranked second and fourth before and second and sixth after the oral exam.[10] They each received one of the eight temporary promotions made that year, but neither has subsequently received a permanent promotion. LRPD argues no discrimination was involved in their failure to get perma-

---

**8.** We recognize that such validation would be a burdensome task. This burden is nonetheless appropriate given the fact that it does not attach unless an adverse impact has been demonstrated. The largely white make-up of the oral exam panel, the subjective nature of the exam, and the demonstrated discrimination and harassment, both past and present, underscore the necessity of the utmost caution before approval of the exam. At a minimum, any oral exam should be conducted by a panel which includes black officers in its numbers. One black officer out of five panel members is insufficient, particularly where "Olympic" scoring—where, for each candidate, the high and low scores of the panel are

thrown out—is used. Efforts should also be made to ensure that the scores in other parts of the exam cannot be ascertained by panel members.

**9.** The rankings in this section of the discussion are based on the written, seniority, performance, and, where applicable, oral scores. *See* Officers' 1978 Scores and Rankings (Appendix II).

**10.** *See* Officers' 1979 Scores and Rankings (Appendix III).

nent promotions, and that they would have received permanent promotions except for the state court injunction. We note, however, that in a related action involving promotions to lieutenant, LRPD settled, allowing the white acting lieutenants to become permanent lieutenants. While we cannot say with certainty that LRPD's failure to settle where permanent promotions of black officers would have been involved was racially motivated, the effect was the same, namely, the withholding of permanent sergeant positions from black officers. Therefore, O'Donald and Walters are also to receive permanent promotions to sergeant as soon as such positions become available, and after Gilbert and Lockhart have received their promotions. O'Donald and Walters are to receive the same back pay, seniority, and benefit compensation[11] as has been discussed earlier for Gilbert and Lockhart.

Accordingly, we remand this matter for a determination of the compensation to be awarded to Gilbert, Walters, Lockhart, and O'Donald. Although appellants requested punitive damages as well, we do not believe this is a proper case for such damages. The costs of this appeal are to be taxed to appellees. Appellants may, in addition, apply to the district court for attorneys' fees.

FAGG, Circuit Judge, dissenting.

Unlike the court, I believe the district court faithfully followed this court's instructions on remand, including the need to consider the "ranking aspect of the promotional system" and the "interrelationship of the component factors." *See ante* at 1212; *see also Gilbert v. City of Little Rock*, No. 78–340, slip op. at 7–17 (E.D.Ark. June 7, 1985). Further, the district court,

in considering plaintiffs' claim, meticulously and in great detail reviewed the extensive and contradictory expert evidence offered by the parties. Based upon its review of the competing evidence, the district court found as a matter of fact that the oral exam portion of the City's promotion process had no adverse impact on the City's black police officers. *See Gilbert*, No. 78–340, slip op. at 16. Because the plaintiffs had failed to establish discrimination on the part of the City, the district court dismissed the plaintiffs' action.

The court today rejects the district court's finding of no discrimination and, after "carefully scrutinizing" the evidence, *ante* at 1214, finds de novo "that the oral exam portion of the promotional process had an adverse impact on the black officers," *id.* In so doing, however, the court has impermissibly substituted its view of the competing expert testimony for that of the district court, the proper trier of fact. *See Maine v. Taylor*, — U.S. —, 106 S.Ct. 2440, 2451, 91 L.Ed.2d 110 (1986); *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985).

Because the district court complied with this court's instructions on remand and further because the district court's finding of no adverse discriminatory impact is not clearly erroneous, the district court's dismissal of this action should be affirmed. Very simply, the district court rather than this court had the responsibility to find the relevant facts. Here, those findings, including the ultimate finding of no discrimination, are supported by the record and should be upheld.

I respectfully dissent.

## APPENDIX I

### Officers' 1978 Scores and Rankings

| Officer | Written Score ($\times$ 40%) | Rank After Written Exam* | Oral Score ($\times$ 25%) | Written & Oral Score | Rank After Written & Oral Exams |
|---|---|---|---|---|---|
| Adams, B. | 39.60 | 8 | 14.04 | 53.64 | 17 |

11. The record does not disclose what, if any, difference there was regarding the respective wages and benefits of the temporary and permanent positions. This, of course, is one of the matters the district court will consider on remand.

| | | | | |
|---|---|---|---|---|
| Agee, A. | 38.40 | 22 | 12.23 | 50.63 | 33 |
| Anderson, R. | 39.60 | 8 | 14.59 | 54.19 | 13 |
| Armstrong, E. | 38.40 | 22 | 16.58 | 54.98 | 8 |
| Aulwes, J. | 39.60 | 8 | 16.31 | 55.91 | 5 |
| Bartsch, T. | 38.00 | 28.5 | 15.67 | 53.67 | 16 |
| Beck, J. | 37.60 | 33 | 12.23 | 49.83 | 37 |
| Bunch, J.** | 39.60 | 8 | 15.13 | 54.73 | 10 |
| Capoot, L. | 36.00 | 40 | 11.60 | 47.60 | 40 |
| Chapman, D. | 38.40 | 22 | 14.77 | 53.17 | 20 |
| Clark, G.** | 38.00 | 28.5 | 13.86 | 51.86 | 24 |
| Duran, D. | 36.40 | 39 | 12.23 | 48.63 | 39 |
| Edwards, J. | 39.60 | 8 | 9.87 | 49.47 | 38 |
| Foster, J.** | 38.00 | 28.5 | 18.48 | 56.48 | 3 |
| Fulks, R.** | 40.00 | 2 | 15.67 | 55.67 | 6 |
| **Gilbert, J. (black)** | **39.60** | **8** | **13.86** | **53.46** | **18** |
| Haggard, R. | 39.20 | 14 | 11.50 | 50.70 | 32 |
| Hardester, J. | 38.00 | 28.5 | 12.95 | 50.95 | 29 |
| Holladay, C. | 38.00 | 28.5 | 17.39 | 55.39 | 7 |
| Johnston, T. | 38.00 | 28.5 | 13.68 | 51.68 | 25 |
| Keel, J. | 37.60 | 33 | 12.96 | 50.56 | 34 |
| Knestrick, G.** | 36.80 | 38 | 18.03 | 54.83 | 9 |
| **Lockhart, A. (black)** | **39.60** | **8** | **10.24** | **49.84** | **36** |
| Long, J. | 38.40 | 22 | 15.40 | 53.80 | 15 |
| Mahaffey, G. | 38.40 | 22 | 13.77 | 52.17 | 28 |
| Mahoney, P.** | 38.80 | 16.5 | 17.48 | 56.28 | 4 |
| Martin, J. | 38.80 | 16.5 | 12.41 | 51.21 | 27 |
| McBrayer, D. | 38.40 | 22 | 11.96 | 50.36 | 35 |
| McKinney, S.** | 40.00 | 2 | 14.04 | 54.04 | 14 |
| Potts, M.** | 39.20 | 14 | 17.58 | 56.78 | 1 |
| Rives, J. | 38.40 | 22 | 12.32 | 50.72 | 31 |
| Rouwasavall, K.** | 37.20 | 35.5 | 17.30 | 54.50 | 11 |
| Rowan, D.** | 40.00 | 2 | 16.76 | 56.76 | 2 |
| Seats, J. | 37.60 | 33 | 15.22 | 52.82 | 23 |
| Van Horn, F. | 37.20 | 35.5 | 15.76 | 52.96 | 22 |
| Vickers, M. | 39.20 | 14 | 13.86 | 53.06 | 21 |
| **Walters, H. (black)** | **39.60** | **8** | **14.77** | **54.37** | **12** |
| Williams, S. | 39.60 | 8 | 11.78 | 51.38 | 26 |
| Williams, W. | 38.80 | 16.5 | 12.14 | 50.94 | 30 |
| Wilson, V.** | 38.80 | 16.5 | 14.40 | 53.20 | 19 |

*Because many officers received the same written scores, there were many ties for ranking position. In that situation, we assigned the average rank to the tied officers. For example, three officers received perfect scores of forty on the written exam and, thus, tied for the first ranked position. The average of first, second, and third ranks is second rank, so each was assigned a rank of second. This method shows the positions of the forty officers relative to each other and their chances at promotion more accurately than if only eleven ranks, representative of their eleven scores, had been used.

**Promoted in 1978.

**APPENDIX II**

**Officers' 1978 Scores and Rankings**

| Officer | Performance, Written & Seniority Score | Rank After Performance, Written & Seniority | Oral Score (× 25%) | Cumulative (All Weighted Scores) | Rank After Cumulative Score |
|---|---|---|---|---|---|
| Adams, B. | 68.03 | 6 | 14.04 | 82.07 | 12 |
| Agee, A. | 67.94 | 7 | 12.23 | 80.17 | 22 |
| Anderson, R. | 66.85 | 9 | 14.59 | 81.44 | 18 |
| Armstrong, E. | 64.98 | 24 | 16.58 | 81.56 | 16 |
| Aulwes, J. | 65.19 | 23 | 16.31 | 81.50 | 17 |
| Bartsch, T. | 62.51 | 40 | 15.67 | 78.18 | 26 |
| Beck, J. | 63.32 | 37 | 12.23 | 75.55 | 37 |
| Bunch, J.* | 68.25 | 5 | 15.13 | 83.38 | 6 |
| Capoot, L. | 65.63 | 19 | 11.60 | 77.23 | 29 |
| Chapman, D. | 64.08 | 32 | 14.77 | 78.85 | 25 |
| Clark, G.* | 70.52 | 1 | 13.86 | 84.38 | 3 |
| Duran, D. | 63.35 | 36 | 12.23 | 75.58 | 36 |
| Edwards, J. | 64.04 | 33 | 9.87 | 73.91 | 40 |
| Foster, J.* | 63.84 | 34 | 18.48 | 82.32 | 9 |
| Fulks, R.* | 66.50 | 12 | 15.67 | 82.17 | 11 |
| **Gilbert, J. (black)** | **67.72** | **8** | **13.86** | **81.58** | **15** |
| Haggard, R. | 65.72 | 17 | 11.50 | 77.22 | 30 |
| Hardester, J. | 64.93 | 25 | 12.95 | 77.88 | 27 |
| Holladay, C. | 64.52 | 29 | 17.39 | 81.91 | 14 |
| Johnston, T. | 65.70 | 18 | 13.68 | 79.38 | 24 |
| Keel, J. | 64.36 | 31 | 12.96 | 77.32 | 28 |
| Knestrick, G.* | 66.13 | 15 | 18.03 | 84.16 | 4 |
| **Lockhart, A. (black)** | **66.63** | **11** | **10.24** | **76.87** | **32** |
| Long, J. | 65.48 | 22 | 15.40 | 80.88 | 19 |
| Mahaffey, G. | 62.78 | 39 | 13.77 | 76.55 | 34 |
| Mahoney, P.* | 68.77 | 4 | 17.48 | 86.25 | 1 |
| Martin, J. | 64.45 | 30 | 12.41 | 76.86 | 33 |
| McBrayer, D. | 64.56 | 27 | 11.96 | 76.52 | 35 |
| McKinney, S.* | 69.30 | 3 | 14.04 | 83.34 | 7 |
| Potts, M.* | 66.15 | 14 | 17.58 | 83.73 | 5 |
| Rives, J. | 64.68 | 26 | 12.32 | 77.00 | 31 |
| Rouwasavall, K.* | 65.54 | 20 | 17.30 | 82.84 | 8 |
| Rowan, D.* | 65.52 | 21 | 16.76 | 82.28 | 10 |
| Seats, J. | 66.74 | 10 | 15.22 | 81.96 | 13 |
| Van Horn, F. | 64.54 | 28 | 15.76 | 80.30 | 21 |
| Vickers, M. | 66.27 | 13 | 13.86 | 80.13 | 23 |
| **Walters, H. (black)** | **65.73** | **16** | **14.77** | **80.50** | **20** |
| Williams, S. | 62.89 | 38 | 11.78 | 74.67 | 39 |
| Williams, W. | 63.37 | 35 | 12.14 | 75.51 | 38 |
| Wilson, V.* | 70.34 | 2 | 14.40 | 84.74 | 2 |

*Promoted in 1978.

## APPENDIX III
### Officers' 1979 Scores and Rankings