Casserene CASSELLS, Plaintiff,

v.

UNIVERSITY HOSPITAL AT STONY BROOK; State University of New York at Stony Brook; John Marburger (President of the State University of New York at Stony Brook); Howard Oaks (Vice President, State University of New York at Stony Brook); William Newell, (Vice President for Hospital Affairs); Pura Laborde de Pantojas, (Deputy Director of Nurses); and Janet Schroeder Entine (Associate Director of Nurses), Defendant.

No. 86 C 0698.

United States District Court, E.D. New York.

June 18, 1990.

C. Vernon Mason, New York City, for plaintiff.

Robert Abrams, Atty. Gen. of the state of N.Y., (Martha O. Shoemaker and Anne Ehrenkranz, Asst. Attys. Gen., of counsel), New York City, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

In this action plaintiff Casserene Cassells alleges her former employer, University Hospital at Stony Brook (University Hospital), State University of New York at Stony Brook, and certain individuals at those two institutions discriminated and retaliated against her because she is a black woman of Jamaican ancestry. Defendants move for summary judgment on all remaining claims.

University Hospital hired plaintiff, a registered nurse, in 1979 as an Associate Director of Nursing for the night shift. In March 1983 she was given notice that her contract would not be renewed when it expired in September 1984. However, in response to an internal contractual grievance proceeding, her contract was extended for another year.

In August 1983, plaintiff filed an action (CV 83–3116, hereinafter "Cassells I") alleging racial discrimination and claiming damages under the Thirteenth and Fourteenth Amendments and 42 U.S.C. § 1983. By memorandum and order dated January 26, 1984, Judge Mishler dismissed the complaint with prejudice for failure to state a claim. The Court of Appeals affirmed the dismissal on June 12, 1984, but modified the order to be without prejudice to plaintiff's repleading valid claims for declaratory and injunctive relief. Plaintiff did not replead.

On July 14, 1984, plaintiff signed and thereafter submitted a charge to the Equal Employment Opportunity Commission (EEOC), which subsequently deferred the charge to the State Division of Human Rights for investigation and determination. The charge alleged grievances similar or identical to those in Cassells I, namely, (1) she was compensated less than similarly situated white employees, (2) her employer compelled her and not white employees to dispense medications she was not licensed to dispense, and (3) she was denied merit raises in 1984 on account of her race and national origin.

In September 1984 plaintiff was again told her contract would not be renewed when it expired a year later. It was not renewed this time, and plaintiff filed a second action on March 10, 1986 ("Cassells II"). The complaint in this action alleged she received notice of termination as of September 26, 1985 and was discriminated against on account of her race in violation of the Thirteenth and Fourteenth Amendments, and asserted claims under 42 U.S.C. §§ 1981 and 1983, Title VI and Title VII of the Civil Rights Act of 1964, and New York Executive Law, Article 15, section 290 et seq. (also known as the New York "Human Rights Law").

This court by memorandum and order dated December 31, 1986, dismissed with prejudice the claims under 42 U.S.C. §§ 1981 and 1983, and dismissed with leave to replead the Title VI and Title VII claims insofar as they were based on claims not adjudicated by Judge Mishler.

Plaintiff then filed an amended complaint reasserting the claims under Title VI, Title VII and the Human Rights Law, and adding a demand for reinstatement. In a memorandum and order of September 9, 1987, 1987 WL 17091, the court deferred defendants' motions for summary judgment on these remaining claims, granting plaintiff additional time to submit a Rule 3(g) statement and an affidavit. The court also ruled that the New York state law claim was not time barred.

Upon plaintiff's additional submissions, this court, by memorandum and order dated February 24, 1988, 1988 WL 20833, granted summary judgment as to the Title VI claim and denied summary judgment on the Title VII claim and the Human Rights Law claim, on the basis of factual issues plaintiff raised as to discriminatory and retaliatory conduct subsequent to Judge Mishler's adjudication.

Familiarity with Judge Mishler's and this court's prior decisions is assumed.

*The Title VII Claim*

Defendants once more raise the argument that plaintiff's Title VII action is barred because she commenced Cassells II prior to the EEOC's issuance of a right-to-sue letter on August 27, 1986. The court addressed a similar argument in its decision of December 31, 1986, which held that since there was no resulting prejudice to the defendants, plaintiff could cure her premature filing by alleging the subsequent issuance of a right-to-sue letter in the amended complaint. This she has done. *See* Amended Complaint, ¶ 10.

■■ It is undisputed that plaintiff filed the amended complaint more than 90 days after the Department of Justice's right-to-sue letter of September 19, 1986. The 90-day limit, however, is not a jurisdictional predicate, but a limitations period subject to equitable tolling. *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir.1984).

This is not a situation analogous to that presented in *Soso Liang Lo v. Pan American World Airways*, 787 F.2d 827 (2d Cir. 1986), where a claimant seeks to evade the 90-day requirement by repeatedly filing the same EEOC charge to solicit a succession of right-to-sue letters. Here, plaintiff filed Cassells II before issuance of her right-to-sue letter began the 90-day period. Once the court has allowed the action to proceed despite the premature filing, it would serve no purpose to dismiss it because the 90-day period passed while plaintiff awaited the court's permission to amend her complaint. *See Gooding v. Warner–Lambert Co.*, 744 F.2d 354, 358 n. 5 (3d Cir.1984) (suit pending when letter issued was timely).

Defendants next argue that plaintiff has failed to allege facts sufficient to raise a genuine issue as to defendants' racial animus. In particular, they characterize her only claim of discriminatory conduct as one incident in which defendant Janet Schroeder Entine, plaintiff's immediate supervisor, called her a "nigger".

■ Though courts have been understandably reluctant to allow an isolated epithet to prove intentional racial discrimination, *see Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir.1985), the impact and relevance of racial remarks must be determined on a case-by-case basis after consideration of the totality of the circumstances. *Robinson v. Montgomery Ward and Co.*, 823 F.2d 793, 797 (4th Cir.1987) *citing Gilbert v. City of Little Rock*, 799 F.2d 1210 (8th Cir.1986).

■ In this case, plaintiff said in her affidavit of October 9, 1989 at ¶ 44 that at the September 18, 1984 meeting in which Entine told plaintiff that her contract would not be renewed, she said "Nigger, we don't want you here." A face-to-face epithet from a supervisor to an employee who is, in effect, being fired, supports a far stronger inference of racial animus than the isolated or incidental remarks delivered in the course of routine affairs that courts

have found wanting in other cases. *See, e.g. Woodbury v. New York City Transit Authority,* 832 F.2d 764, 771 (2d Cir.1987) (lenient punishment of an officer for racially derogatory remark during roll call insufficient to prove pattern or practice of intentionally discriminatory lenience towards white officers); *Clark v. Atchison Topeka & Santa Fe Railway Co.,* 731 F.2d 698, 702–03 (10th Cir.1984) (derogatory remark to a different Indian employee and newsletter description of plaintiff's solving a theft as "how's that for the tracking ability of an Indian?" insufficient to show employer's discriminatory intent); *Robinson v. Montgomery Ward and Co., Inc.,* 823 F.2d 793 (4th Cir.1987) (supervisor's addressing plaintiff as "black beauty" and remarks to others in context of Jesse Jackson's presidential campaign that blacks could not succeed at anything but sports insufficient).

In any case, plaintiff has alleged more than this particular incident. In her affidavit dated February 9, 1990, she swears that in 1984, Entine told her she did not like Jamaicans because they were "too pushy," told her to get rid of her Jamaican accent, and said she had previously beaten a Jamaican woman and would do the same to plaintiff if she did not follow orders.

Plaintiff also relates other instances of treatment she found abusive or discriminatory that she raised before Judge Mishler. While these incidents cannot themselves support her present claim, they may serve as evidence that other discriminatory acts occurred since Cassells I. *See Cassells v. University Hospital at Stony Brook,* No. 86 CV 0698 slip op. at 13 (E.D.N.Y. Dec. 31, 1986).

■ Mere conclusory allegations or denials will not avail a party resisting summary judgment. *See SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir. 1978). However, plaintiff's sworn statements clearly fulfil her burden of producing some evidence that her "version of relevant events is not fanciful." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2d Cir.1980). Defendants' contradictory version of events and plaintiff's choice not to testify to these events at her

depositions are factors that throw doubt on plaintiff's credibility, not on whether she has produced evidence that places in issue the truth of a material fact.

The court previously denied summary judgment on plaintiff's claims of retaliation based on her earlier affidavit of October 9, 1987. Defendants now argue that since plaintiff's EEOC charge was not stamped received by University Hospital until September 25, 1984, and plaintiff was told she would not be reappointed on September 18, 1984, the decision not to reappoint her could not have been in retaliation for her EEOC charge.

Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000e–3(a) prohibits employers from firing workers because any worker "has opposed any practice made an unlawful employment practice by this subchapter, or because [the worker] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter."

■ To make a *prima facie* showing of retaliation, a plaintiff must show she engaged in protected participation or opposition, that the employer was aware of this activity, that the employer took adverse action against the employee, and that there was a causal relation between the adverse action and the employee's protected activities. *Sumner v. U.S. Postal Service,* 899 F.2d 203, 208–09 (2d Cir.1990).

■ Opposition is a term that embraces more than complaints made in enforcement proceedings under Title VII. It may include direct complaints to the employer, *see Manoharan v. Columbia University College of Physicians and Surgeons,* 842 F.2d 590 (2d Cir.1988), or formal legal proceedings under statutes other than Title VII, *see, e.g., Hoggard v. Guard Publishing,* 13 F.E.P. (BNA) 1179 (D.Or.1979), so long as the practice complained of is one unlawful under Title VII.

■ Plaintiff's earlier lawsuit, Cassells I, and her complaints to her supervisors as to discriminatory treatment, may also serve as "opposition" upon which to predicate a claim of retaliation. That Judge Mishler

dismissed the claims in Cassells I does not preclude them as a basis for subsequent retaliation, particularly in view of the fact the Second Circuit granted her leave to replead her claims approximately four months before she was told her contract was not renewed.

Opposition need not be to conduct actually found to violate Title VII, so long as plaintiff held a "good faith, reasonable belief" that such conduct violated the law. *Manoharan* at 593. No argument has been made that her previous complaints, their merits aside, were unreasonable or not in good faith.

Moreover, plaintiff contends her immediate supervisors were aware of the complaints that formed the basis of her EEOC charge. One of the exhibits to plaintiff's deposition of October 21, 1988 is a handwritten memorandum dated August 25, 1988 plaintiff addressed to Entine, indicating copies for another supervisor, her attorney, and her union representative. It reads:

> You informed me that I had filed an official complaint with the E.E.O.C. for continuing harassment and therefore my contract will be terminated in Sept 26th 1985. You were extremely critical and stated regardless of what had happened, I should not seek outside intervention.

While the contents of this memorandum are hearsay as to the truth of the matters asserted, the existence of the memorandum supports an inference that at some time prior to the University Hospital's receipt of plaintiff's EEOC charge, plaintiff had made her supervisors aware of her complaints.

At this juncture, the court finds these circumstances raise doubt as to whether plaintiff's supervisors knew of her complaints and retaliated against her that is sufficient to preclude summary judgment.

*The Human Rights Law Claim*

Defendants contend that state sovereign immunity and the Eleventh Amendment preclude this court from entertaining the Human Rights Law claim and its concomitant demand for punitive and compensatory damages. Prior decisions of this court and of Judge Mishler have held all remaining defendants in this action are agencies or officers of the state acting in their official capacities.

Common law immunity concerns whether a state consents to subject itself to a particular legal action, whereas constitutional immunity under the Eleventh Amendment concerns whether a state consents to suit in the federal forum. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 99–100, 104 S.Ct. 900, 907–908, 79 L.Ed.2d 67 (1984).

New York courts have interpreted the provisions of Exec. Law § 296 that prohibit "an employer" or "any employer" from acts of discrimination and retaliation to embrace the state in its capacity as an employer. *See Ramos v. New York City Police Department,* 127 Misc.2d 872, 487 N.Y. S.2d 667, 669–671 (Sup.Ct.1985). New York's highest court deems the state legislature to have waived both the State's immunity to suit for monetary damages under the Human Rights Law, and the requirement that the State be sued for money damages only in the Court of Claims. *Koerner v. State of New York,* 62 N.Y.2d 442, 450, 478 N.Y.S.2d 584, 587, 467 N.E.2d 232, 235 (1984).

The question remains, however, whether New York has consented to suit under the Human Rights Law in federal court. The Supreme Court in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 122, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984) held that the Eleventh Amendment bars citizens from enforcing pendent state law claims against their state in a federal court. Though a state may waive the protection of the Eleventh Amendment, *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883), a federal court should construe a waiver "only where stated 'by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909).

New York Executive Law, Article 15, § 297(9) provides:

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate.... No person who has initiated any action in a court of competent jurisdiction ... may file a complaint with respect to the same grievance under this section[.]

The question arises whether the legislature intended the term "any court of appropriate jurisdiction" to act as consent to bring action against the State in a federal court.

In *McGrath v. State Human Rights Appeal Board*, 90 A.D.2d 916, 456 N.Y.S.2d 874 (3d Dep't 1982), the state Appellate Division held that a federal court was a court of competent jurisdiction in a litigant's prior suit against the State University of New York at Plattsburgh. The decision does not mention, however, whether McGrath's suit in federal court was based on state law, or upon a Title VII claim, the latter of which may be tried against a state in federal court. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). A federal court may be "competent" to hear federal claims based on facts that also make out grievances under the state Human Rights Law, and yet be "inappropriate" as a forum for Human Rights Law claims. The opinion of the Appellate Division did not focus on the issue of whether the State had consented to the institution of a Human Rights Law claim in a federal court.

The Supreme Court rejected language similar to "any court of appropriate jurisdiction" as the basis of a Congressional lifting of state immunity in *Employees of the Department of Public Health & Welfare v. Department of Public Health & Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). In that case, the statute at issue was the Fair Labor Standards Act, which provided employer liability in the form of liquidated damages in an action maintained "in any court of competent jurisdiction". *Id.* at 283, 93 S.Ct. at 1617. Though the Act had been amended to include public hospitals under the rubric of "employers," the Court held this statutory language did not prevent the assertion of state immunity to suit in federal court.

In *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), the Court rejected the argument that a state statute waiving a state agency's immunity to taxpayer suits "in any court of competent jurisdiction" operated as consent to suit in federal court. *Id.* at 465, 65 S.Ct. at 351. The great majority of courts evaluating similar statutory language have found it inadequate as a waiver of Eleventh Amendment immunity. *See, e.g., Kennecott Copper Corp. v. State Tax Commission*, 327 U.S. 573, 577–79, 66 S.Ct. 745, 747–48, 90 L.Ed. 862 (1946); *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241–42, 105 S.Ct. 3142, 3146–47, 87 L.Ed.2d 171 (1985) (state constitutional provision allowing suits against state "in such courts as shall be directed by law" no waiver); *Gwinn Area Community Schools v. State of Michigan*, 741 F.2d 840, 847 (6th Cir.1984); *Kirwin v. New York State Office of Mental Health*, 665 F.Supp. 1034, 1038 (E.D.N.Y.1987); *see also Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 969 (2d Cir.1984) (dismissing Title VII litigant's pendent claims under New York's constitution and civil rights, civil service and executive laws without discussing statutory language). *But see Reagan v. Farmers' Loan & Trust Co.*, 154 U.S. 362, 392, 14 S.Ct. 1047, 1052, 38 L.Ed. 1014 (1894) ("court of competent jurisdiction" in a particular county includes federal court).

As plaintiff has suggested no basis at all for a waiver, much less an alternate basis, the court holds the Eleventh Amendment bars the state claim.

### Conclusion

Defendants' motions for summary judgment on claims under Title VII is denied. The Human Rights Law claim is dismissed. The case will be tried to the court.

So ordered.