**Allan A. SMITH, Plaintiff–Appellant,**

**v.**

**George KALDOR, Chief, Laboratory Service, Veterans Administration, Allen Park, Michigan; Veterans Administration Medical Center, Allen Park, Michigan; United States of America, Defendants–Appellees.**

**No. 88–1125.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 15, 1988.

Decided March 17, 1989.

---

James Arredondo (argued), Jeffrey S. Burg, Blum, Konheim and Elkin, Southfield, Mich., for Allan A. Smith.

Francis L. Zebot, Asst. U.S. Atty. (argued), Detroit, Mich., for George Kaldor, Chief, Laboratory Service, VAMC, Allen Park, Veterans Admin. Medical Center and U.S.

Before ENGEL, Chief Judge, WELLFORD, Circuit Judge; and THOMAS, Senior United States District Judge.*

WILLIAM K. THOMAS, Senior District Judge.

Allan Smith, a former employee of the Veterans Administration Medical Center at Allen Park, Michigan (VAMC or VA), appeals the trial court's dismissal of his 10 count complaint. The complaint was filed on January 30, 1986 against George Kaldor, Chief, Laboratory Service, Veterans Administration, Allen Park, Michigan, and Veterans Administration Medical Center, United States of America. The complaint charged in count VI that "Defendant" had been "guilty of racial discrimination against Plaintiff by the treatment of Plaintiff by his superiors and by termination of his employment [effective December 30, 1985] in violation of the Civil Rights Act." Count IX, adopting by reference counts I through VIII, alleged that plaintiff was discharged "in a manner violative of the Master Agreement between the Veterans Administration and the American Federation of Government Employees dated August, 1982." Among the other counts were claims for breach of an implied employment contract, wrongful discharge and denial of due process, but as the trial court noted, all counts "contain or refer to allegations relating to Plaintiff's employment at the VAMC and his eventual discharge."

Plaintiff Smith requested $10,000 in money damages and punitive damages; and a writ of mandamus and a mandatory injunction "directing Defendants to re-employ plaintiff ... (1) providing Plaintiff with constitutional rights to due process procedures; ... (3) acting pursuant to the di-

* The Honorable William K. Thomas, Senior District Judge of the United States District Court for the Northern District of Ohio, sitting by designation.

rection of the Equal Employment Opportunity Commission; and (4) acting in accordance with the provisions of the Collective Bargaining Contract."

Finding that the "Plaintiff" had "failed to pursue and exhaust the internal union remedies available to him," the trial court granted defendant's motion to dismiss. Effective December 7, 1987, the trial court, "[f]ollowing a review of the entire record," concluded that its "Order of Dismissal was correctly decided" and denied "Plaintiff's Motion for Reconsideration." Plaintiff Smith filed a timely notice of appeal from the order denying reconsideration as well as the original order of dismissal.

## I.

### A.

After an earlier period of employment at VAMC, not presently material, Allan Smith "returned to employment June 23, 1980 as a GS–7 Probationary Pathology Technician assigned Histopathology duties." Mr. Smith's appointment was subject to completion of a one year probationary period. On January 2, 1981, Smith was separated from employment for alleged "poor work performance and work relationships."

On February 9, 1981, Smith filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging race (white), sex and religious discrimination. Following a formal hearing, the Complaints Examiner recommended a decision finding racial discrimination and ordering Smith's reinstatement. In its decision, the VA rejected the Examiner's recommended decision. On November 25, 1983, Smith appealed to the EEOC. In a decision of June 19, 1985, the EEOC reversed the VA decision and determined that Smith was "unlawfully terminated because of his race (white)." The agency was ordered to retroactively reinstate Smith. The VA, on July 23, 1985, filed a request for reopening and reconsideration.[1]

Pursuant to a letter from the VA Assistant General Counsel, and pending the outcome of the VA's request to reopen, Smith was given a temporary appointment not to exceed August 3, 1986, effective August 12, 1985.[2] When Smith was re-employed in August of 1985, he "was advised that he was a member of the bargaining unit protected by the Master Agreement between the Veterans Administration and the American Federation of Government Employees [AFGE]."

After his August 12, 1985 appointment, Smith received two unfavorable work evaluation letters from Supervisor Harrison dated October 28, 1985 and October 30, 1985. The letters informed Smith that the quality of his work, and his attitude and ability to work well with others was not up to standard. They also alleged that Smith had been tardy 10 times; five of those instances occurring after he had been counseled. Smith responded to these work performance evaluations by letter dated November 1, 1985. He attempted to explain his recent tardiness. He requested that the VA be more specific in their other complaints and disagreed with some specific allegations in the evaluations. Smith also advised the VA that he had "on at least two (2) occasions advised [the VA that he was] being harassed" and "deprived of opportunity that is being accorded to other technicians."

Through the AFGE (Union), Smith filed a grievance with Supervisor Harrison on November 5, 1985, relating to "employer

1. The EEOC denied the VA's request on October 29, 1986, stating that "the file does not contain any notice from the agency indicating its intent to request reopening within the time specified in the EEOC decision ... Therefore, the Commission denies the request as untimely." The trial court, indicating that it was uncertain of the status of the request when it filed its August 3, 1987 memorandum and order, stated that the agency "timely requested the EEOC to re-open and reconsider its appellate decision pursuant to 29 C.F.R. 1613.3235. (sic)"

2. Affiant Alan Wilcox states that pursuant to instructions from the Veterans Administration Discrimination Complaints Service, "Mr. Smith's August 12, 1985 appointment [was] corrected to a Reinstatement Career Conditional [on March 20, 1986] with limitations as outlined in 29 C.F.R. 1613.235(b). (29 C.F.R. § 1613.237, Corrective Action, also appears to be relevant).

harassment." He requested a meeting at the first step of the grievance procedure.

Mr. Smith received a November 22, 1985 notice of the "final counseling interview in connection with the matter you presented to the EEO Counselor." He was told

> If you believe you have been discriminated against on the basis of race, color, religion, sex or national origin, you have the right to file a COMPLAINT OF DISCRIMINATION WITHIN 15 CALENDAR DAYS AFTER RECEIPT OF THIS NOTICE.

Three persons, and their addresses, with whom the written complaint may be filed, were listed. As of January 24, 1986 VAMC at Allen Park reported to VA General Counsel that "Mr. Smith has not attempted to file a formal EEO complaint."

On November 25, 1985 George Kaldor, M.D., Chief, Laboratory Service, directed a memorandum, "Subj.: Insubordination," to "Mr. Allan Smith." Attached to the memorandum was Supervisor George Harrison's memorandum which identified an autopsy and noted that "Mr. Smith refused to assist with the autopsy." Dr. Kaldor notified Mr. Smith that he intended "to discuss this matter with you and your legal representative in the presence of Mr. Harrison and Dr. Domanowski within five working days." At the request of Mr. Smith's attorney the meeting on the "insubordination" charge was postponed until after December 9, 1985.[3]

In a memo of December 16, 1985, the VAMC Chief, Personnel Service (Alan Wilcox) notified Mr. Smith that effective December 30, 1985 his "temporary appointment will be terminated." Three reasons were given: (1) "On November 25, 1985, you were insubordinate ..."; (2) "Your work performance ... has not met the quality requirements of Laboratory Service"; (3) "You have been tardy an excessive number of times ...".

On December 23, 1985 the Union's chief steward directed a letter to Dr. G. Kaldor, entitled "Second Step of the Negotiated Grievance Procedure for Mr. Allan Smith Concerning Harassment." The letter began

> In response to a memo dated December 16, 1985, from Chief, Personnel Service, this grievance is filed at the second step of the negotiated grievance procedure on behalf of Mr. Allan A. Smith, Laboratory Technician.

The letter cited eleven "incidents of harassment on the part of management." Item "j" read "Termination notice, Violation of Article 10, Section 1(A)(3) of the Master Agreement." A meeting was requested. On the next day, December 24, 1985, Dr. Kaldor was notified by the Union that "Mr. Allan Smith chooses to have his attorney, Mr. H. Rollin Allen, as his legal representative at the meeting scheduled for 9:00 a.m., Thursday, December 26th." In a letter of December 30, 1985 to Mr. Allan Smith, Dr. Kaldor wrote: "Subj: Grievance"

> 1. This is in response to your grievance concerning the termination of your temporary appointment and the issues related to it, which we discussed in our second-step meeting on December 26, 1985.
> 2. I have fully considered all of the information you presented at our meeting, along with other evidence developed in the course of this matter. Based on this review, I must deny the grievance.

On December 30, 1985, Mr. Smith was terminated.

### B.

As seen, plaintiff filed his action in district court on January 30, 1986. Thereafter, on March 24, 1986, defendants filed a motion to dismiss the action and to dismiss Kaldor as an improper party, and a response in opposition to Smith's motion for preliminary injunction. Injunctive relief was denied after a hearing on the matter on April 2, 1986. On August 4, 1987, the

---

**3.** Also on November 25, 1985, Supervisor Harrison submitted an evaluation to Mr. Smith in which "Continuation of Employment" was "Not Recommended." Mr. Smith, by letter of December 3, 1985, asked for "specific reasons why you do not recommend continued employment" and asserted, "I still feel I am being harassed and that I am being deprived of opportunities that are being afforded to other technicians."

trial court granted defendants' motion to dismiss, stating

Both parties ... have failed to properly focus their arguments on a point this Court finds dispositive, i.e., that Plaintiff, while employed at the VAMC in Allen Park, was employed by the federal government under a Master Agreement between the Veterans Administration and the American Federation of Government Employees. The terms and conditions of Plaintiff's employment with the Veterans Administration were therefore exclusively governed by that Agreement. And, since all of Plaintiff's allegations in the instant case relate to his employment ("harassment," disparate treatment, wrongful discharge, etc.), relief or redress should have likewise been sought under the Agreement, through Plaintiff's union representative.

.    .    .    .    .

Since the record indicates that Plaintiff failed to pursue and exhaust the internal union remedies available to him, the Court is constrained to dismiss Plaintiff's Complaint.[4]

On December 8, 1987, in denying plaintiff Smith's motion for reconsideration, the trial court notes that plaintiff first claims he "was not a member of the bargaining unit at the time of his discharge," and therefore, "the Court's dismissal based on Plaintiff's failure to exhaust his union remedies was erroneous." Then, "in his reply brief ... chang[ing] his position," plaintiff argues that "though he enjoyed bargaining status, and while he did file a grievance with respect to alleged harassment by his employer, he did not elect to grieve his termination."

On plaintiff's behalf, the Union had written to Dr. Kaldor, responding to the December 16, 1985 notice of Mr. Smith's scheduled termination on December 30, 1985, that "this grievance is filed at the second step of the negotiated grievance procedure." Thus, the Union combined in one grievance the scheduled termination of Mr. Smith and the earlier November 5th "employer harassment" grievance. As seen, the Union listed 11 items of "harassment on the part of management" in all, including the "termination notice." Then, Dr. Kaldor met with Mr. Smith and his attorney on December 26th. Four days later he reviewed the meeting and denied the grievance.

Article 13 of the Master Agreement, Section 7, *Step 3*, provides

If no mutually satisfactory settlement is reached as a result of the second step, the aggrieved party or the Union shall submit the grievance to the Director, or designee, in writing within 7 calendar days of receipt of the decision of Step 2.

Thus, at Step 3, either Allan Smith or the Union could have submitted the termination grievance to "the Director or designee." If the grievance had not been satisfactorily resolved at Step 3, the grievance "may" have been "referred to arbitration as provided in Article 14." Had the grievance proceeded beyond Step 2, to Step 3 or to arbitration, if held, the plaintiff could have raised the objections to Dr. Kaldor's treatment of Mr. Smith's grievance which his attorney asserts in his complaint, paragraph 6P

Defendant, George Kaldor, agreed to conduct a hearing with Plaintiff's attorney present before discharging Plaintiff, but instead, gave Plaintiff a discharge notice, without a hearing and without giving Plaintiff or Plaintiff's attorney an opportunity to present Plaintiff's response to charges.[5]

---

4. The trial court found that Mr. Smith was "employed by the federal government under a Master Agreement between the Veterans Administration and the American Federation of Government Employees." A review of the record satisfies this court that this finding is supported by substantial evidence, including admissions of both parties. In view of the trial court's reliance on the Master Agreement, and the argument of counsel with reference to several sections of the Agreement, this court asked the Government to supply a copy of the Master Agreement. It is now made a part of the appellate record.

5. Similarly, plaintiff's attorney wrote in his October 13, 1987 brief supporting his motion for reconsideration, that "[p]laintiff's employment was terminated before any hearing or meeting was held to discuss the accuracy and circum-

Hence, it is determined that the record contains substantial evidence that supports the trial court's conclusion that plaintiff Smith failed to pursue and exhaust the internal union remedies available to him.

Thus, plaintiff attempted, without success, to separate his November 5, 1985 "harassment on the part of management" grievance from his December 30, 1987 termination notice of December 16th, both of which grievances were the subject of his December 23, 1985 second-step grievance letter. By his ruling, the court found that both of these grievances were heard on December 26, 1985 and were resolved against plaintiff Smith by Dr. Kaldor on December 30, 1985. This court finds that there is substantial evidence that upholds the trial court's finding that the plaintiff failed to exhaust his internal Union remedies to appeal Dr. Kaldor's denial of plaintiff's joint grievances, including his employment termination of December 30, 1985.

### C.

To better understand plaintiff's assertion on appeal of a Title VII discrimination claim, it is helpful to examine the conclusion to his October 13, 1987 brief filed with the trial court:

Plaintiff had the right to elect his avenue of redress. Plaintiff should be permitted to go forward with his Complaint in this matter to pursue his statutory remedies for breach of contract and discrimination in wrongfully terminating his employment.

The Government's Rebuttal Brief correctly identifies the "statutory remedies" available to the plaintiff Smith. It stated that the only relevant statutory procedure "is for Title VII discrimination pursuant to 42 U.S.C. § 2000e–16 (encompassed within 5 U.S.C. § 2302(b)(1)) [Merit System Principles]. *See* 5 U.S.C. § 7121(d)." The Government's Rebuttal Brief further stated

stances surrounding the substance of the allegations against Plaintiff. Thus, when Plaintiff's counsel met with Kaldor, Plaintiff's employment had already been terminated and no op-

Whether treated as a temporary employee (incorrectly) or a probationary employee (correctly), plaintiff was not eligible for any rights under 5 U.S.C. § 4303 (actions based on non-satisfactory performance) or under 5 U.S.C. § 7512 (adverse actions). 5 U.S.C. § 4303(f)(2) (section does *not* apply to probationary or temporary ["trial period"] employees); 5 U.S.C. § 7511(a)(1)(A) (for purposes of subchapter II concerning removal—*see* 5 U.S.C. §§ 7512, 7513—"employee" does *not* include probationary or temporary ["trial period"] employees). (Footnote omitted).

With plaintiff Smith asserting a Title VII cause of action (count VI), the defendants moved for dismissal of the entire action because of "exclusivity of Title VII remedies," and "failure to exhaust administrative remedies." Defendants noted that 29 C.F.R. § 1613.213 provides that an aggrieved person, informally, may consult with an agency EEO counselor to raise a matter causing the person to believe he or she had been discriminated against. If resolution of the matter does not result, the EEO counselor gives written notice of the right to file a written EEO complaint with the appropriate agency official within 15 days of the final interview. Defendants observed that the plaintiff never filed a written discrimination complaint after receiving timely notice of his right to do so.

### II.

### A.

Altering the arguments which he advanced before the trial court, appellant Smith (through different counsel) asserts that "Judge LaPlata's ruling foreclosing plaintiff-appellant's Title VII cause of action on the basis of failure to exhaust Union administrative remedies is clearly erroneous in light of well-settled Supreme Court rulings to the contrary." Plaintiff-appellant notes that in *Atchison, Topeka & Santa Fe Railway Co. v. Buell*, 480 U.S.

portunity for a hearing or the presentation of evidence on Plaintiff's behalf regarding the discharge was afforded."

557, 564, 107 S.Ct. 1410, 1415, 94 L.Ed.2d 563 (1987) the Court declared

This Court has, on numerous occasions, declined to hold that individual employees are, because of the availability of arbitration, barred from bringing claims under federal statutes. See, *e.g., McDonald v. West Branch*, 466 U.S. 284 [104 S.Ct. 1799, 80 L.Ed.2d 302] (1984); *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728 [101 S.Ct. 1437, 67 L.Ed.2d 641] (1981); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36 [94 S.Ct. 1011, 39 L.Ed.2d 147] (1974). Although the analysis of the question under each statute is quite distinct, the theory running through these cases is that notwithstanding the strong policies encouraging arbitration, "different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." *Barrentine, supra*, [450 U.S.] at 737 [101 S.Ct. at 1443].

In *Alexander*, the Supreme Court held that an individual does not forfeit his Title VII cause of action against his employer if he first pursues his grievance to final arbitration under a collective bargaining agreement. The Court stated that the doctrine of election of remedies

has no application in the present context. In submitting his grievance to arbitration, an employee seeks to vindicate his contractual rights under a collective bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress.

*Id.* 415 U.S. at 49, 50, 94 S.Ct. at 1020. In no relevant statute had Congress incorporated the doctrine of election of remedies, as to Title VII claims against private employers.

However here, as the Government points out, plaintiff Smith's rights as a federal employee are governed by 5 U.S.C. § 7121(d), which explicitly requires an aggrieved employee to make an irrevocable election of remedies. Pursuant to § 7121(d) a federal employee "may raise [prohibited personnel practice under 2302(b)(1) ] under a statutory procedure or the negotiated procedure, but not both." Section 7121(d) applies if the prohibited personnel practice "falls under the coverage of the negotiated grievance procedure." The Supreme Court rulings in *Atchison* and *Alexander* apply to employees bringing Title VII actions against private employers. Smith is a federal employee and, if the prohibited personnel practice falls under the coverage of the Master Agreement, he was required by section 7121(d) to raise "the matter under a statutory procedure or the negotiated procedure, but not both."

### B.

Relying on Article 12, Section 7d, of the Master Agreement, Smith argues that § 7121(d) does not apply to Smith and, accordingly, he is not required to make an election of remedies under 7121(d). Therefore, his failure to exhaust his union remedies does not foreclose him from proceeding under Title VII. The Government insists that the words of Article 12, Section 7D, which state that these provisions "do not apply to probationary/trial or temporary employees" provide an exclusion that is only applicable to Section 7 of Article 12. Section 7–"Processing Disciplinary/Adverse Actions" contains subsections A through D. The exclusion of subsection D states in full

These provisions do not apply to probationary/trial or temporary employees. These employees will be given 2 weeks notice prior to separation. Such notice will include a statement of the reason for separation.

It is evident that the antecedent of "these provisions" of subsection D are the immediately preceding subsections A, B and C. Plainly, subsection D does not preclude coverage of "probationary/trial or temporary employees" as to other Articles of the Master Agreement (including Article 13, "Grievance Procedure").

In his brief of October 13, 1987, filed in the trial court, plaintiff Smith states, "Plaintiff's position is that he was in the bargaining unit and Count IX ['Defendant

has discharged Plaintiff in a manner violative of the Master Agreement'] should not be stricken." Plaintiff-appellant Smith may not, at the appellate level, shed the firm and unambiguous position he took at the trial level.

Additionally, Smith deliberately invoked the Master Agreement's right to grieve, (1) when the Union filed a grievance on his behalf on November 5, 1985; and (2) when the Union filed the second step letter of December 23, 1985, which stated that the Union, for Mr. Smith, grieved his termination notice as the "culmination" of the "harassment of management."

Plaintiff Smith, by electing to proceed under the Master Agreement, was foreclosed from pursuing the statutory remedy until he had exhausted his remedies under the Master Agreement. Pursuant to 20 C.F.R. § 1613.219, an employee must make an election of remedies when he "is covered by a negotiated grievance procedure permitting allegations of discrimination." Under Article 13 of the Master Agreement a "discrimination" action under 5 U.S.C. § 2302(b)(1) may be filed "under the statutory appeal procedure or the negotiated grievance procedure, but not both." Because of this provision, and pursuant to § 1613.219, an employee (like plaintiff Smith) who "files a grievance in writing with an agency whose negotiated agreement ... permits the acceptance of [a] grievance which allege[s] discrimination ... may not thereafter file a complaint [under 20 C.F.R. § 1613.214] on the same matter." Any complaint filed "after a grievance has been filed on the same matter shall be rejected." However, the employee retains the right "to proceed through the negotiated grievance process" and "to request the [EEOC] Commission to review a final decision as provided in 5 U.S.C. § 7121(d) and at § 1613.231(b)."

Plaintiff Smith, upon filing a grievance under Article 13 of the Master Agreement,

elected the remedy of proceeding under the negotiated grievance procedure and was foreclosed from filing a complaint under 20 C.F.R. § 1613.214. If he had proceeded to the third step, or on to the fourth step of arbitration, he could have requested that the EEOC review the final decision. However, he failed to exhaust his remedies under the negotiated grievance procedure and, therefore, cannot now proceed under his Title VII statutory remedy.

### C.

*Brown v. General Services Administration*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976), holds that section 717(c) of Title VII (now 42 U.S.C. § 2000e–16) permits an aggrieved employee "to file a civil action in a federal district court to review his claim of employment discrimination" but "[i]nitially, the complainant must seek relief in the agency that has allegedly discriminated against him." While he does not refer to *Brown v. General Services Administration*, plaintiff-appellant Smith appears to recognize his duty to exhaust administrative procedures. He declares, "[s]hould Plaintiff–Appellant's Count VI be reinstated in trial court by this Court's remand, Plaintiff–Appellant should be deemed under equitable principles to have satisfied the administrative requirements of TITLE VII."

As noted, *supra* at p. 1002, plaintiff Smith, on November 22, 1985 received written notice of the "final counseling interview in connection with the matter [he] presented to the EEO Counselor" and of his "right to file a COMPLAINT OF DISCRIMINATION WITHIN 15 CALENDAR DAYS AFTER RECEIPT OF THIS NOTICE." However, plaintiff Smith did not file a complaint of discrimination. Had he done so, further appeal steps were required of him at the EEOC level, which, of course, he did not undertake.[6]

---

**6.** If the employee is not satisfied with the agency's disposition of his written complaint, he may appeal to the EEOC at any time up to 20 calendar days after receipt of the agency's decision 29 C.F.R. §§ 1613.231, 1613.233. If the employee appeals, then the Office of Review and Appeals, on behalf of the EEOC, must review the complaint file and issue a written decision. A decision by the Office of Review and Appeals is final unless, within 30 days of receipt, either party files a timely request to reopen 29 C.F.R. 1613.-234. 42 U.S.C. § 2000e–16(c) authorizes the fil-

After recognizing the several time limits specified in 42 U.S.C. § 2000e–16(c), Plaintiff-appellant Smith notes that these time limits are subject to equitable tolling under *Zipes v. TransWorld Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed. 2d 234 (1982)

> We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. (Footnote omitted).

Prior to *Zipes*, this court in *Leake v. University of Cincinnati*, 605 F.2d 255, 259 (6th Cir.1979), had similarly held that "in appropriate circumstances, Title VII time periods may be tolled on equitable grounds." In *Leake*, the court noted that "correspondence between plaintiff and the University clearly put the University on notice that plaintiff was asserting rights pursuant to Title VII, and provided the University with the protections which limitation periods are intended to provide." The court further observed that it was during this period of "voluntary negotiations" that "plaintiff and the University agreed that she would give the University sufficient time to investigate her complaints, and the University agreed that it would not use the time it spent in its investigation to prejudice plaintiff with respect to any statute of limitations." Therefore, the *Leake* court held that "the University's express statements, and plaintiff's reliance thereon, could reasonably have led plaintiff to delay in the filing of her charges with the EEOC."

Plaintiff-appellant Smith does not contend, nor does the record reveal, that either the VAMC, the VA, or the EEOC, engaged in any misleading or deceptive conduct that caused appellant Smith to fail to file a discrimination complaint against Dr. Kaldor, VAMC, or VA.[7] Thus, this court determines that plaintiff-appellant's reliance on *Zipes, supra*, to excuse his non-compliance with Title VII time limits is without support in the record and is misplaced.[8]

### D.

In seeking application of the principle of equitable tolling of the Title VII time limits, plaintiff-appellant Smith reasons:

> Plaintiff–Appellant timely filed an EEOC complaint in January, 1981. The Commission's final decision and resulting right-to-sue [letter] was issued in June, 1985, ordering relief for Plaintiff–Appellant in the form of back pay and reinstatement. It is between that order and the filing of Plaintiff–Appellant's suit on 1/30/86, some Two Hundred (200) days beyond Plaintiff–Appellant's receipt of his notice of right-to-sue [letter] that equitable considerations should apply to toll the thirty (30) day time period in which Plaintiff–Appellant could bring suit in federal court.

Apparently, Smith argues that his December 30, 1985 termination was a continuing discriminatory violation that dates back to his 1981 discriminatory discharge and, therefore, he is excused from the strict time requirements of Title VII. *See Held v. Gulf Oil Co.*, 684 F.2d 427 (6th Cir.1982). Some acts of discrimination, as in *Held*, or "maintenance of a discriminatory, hiring, placement, or promotion system," have been recognized as "continuing violations." *Quillen v. U.S. Postal Service*, 564 F.Supp. 314, 318 (E.D.Mich.1983). *See also Jacobs v. Board of Regents*, 473 F.Supp. 663, 668 (S.D.Fla.1979) and cases collected there. Courts have consistently held that the discharge of an employee is a

---

ing of a civil action in district court within 30 days of receipt of "notice of final action taken by a department agency ... or by the Equal Employment Opportunity Commission from a decision or order of such department, agency ..." *See also* 20 C.F.R. § 1613.281.

**7.** *Fox v. Eaton Corp.*, 689 F.2d 91, 93 (6th Cir. 1982), distinguishing *Leake v. University of Cincinnati*, noted with approval the district judge's apt observation that the plaintiff did not contend "that her delay in instituting EEOC proceedings was in any way attributable to misleading or deceptive conduct undertaken by either the instant defendant or the EEOC itself." (Citations omitted).

**8.** Accordingly, none of the equitable considerations identified by Smith are material and do not require specific evaluation.

"discrete act[ ] of discrimination that [does] not rise to the level of [a] continuing violation." *Quillen* at 318.

Smith's second termination on December 30, 1985 was a discrete act and not a continuing violation. Therefore, he was required to pursue administrative remedies before bringing a Title VII suit in district court. As seen, he received notice on November 22, 1985 of his right to file a discrimination complaint with the agency, but failed to do so. Further, he failed to file a discrimination complaint after his termination on December 30, 1985. Therefore, he failed to pursue or exhaust his administrative remedies and is barred from bringing his Count VI, Title VII employment discrimination action in district court for his December 30, 1985 termination. *Brown v. General Services Administration*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976).

Previously, this court has sustained the trial court's dismissal of plaintiff-appellant's entire action because he failed to exhaust his internal union remedies under the Master Agreement, a breach of which he claimed in count IX. By sustaining the trial court as to dismissal of count IX, and by now determining that plaintiff-appellant Smith is barred from bringing count VI, it is concluded that the trial court's dismissal of the entire action was without error. It is manifest that remaining counts I, II, III, IV, V, VII, VIII, X, and supplemental count XI, are all subsumed within counts IX and VI. Having disallowed all of his plaintiff-appellant's grounds of error, plaintiff-appellant Smith's appeal is DENIED.