Dinah MOCHE, Plaintiff,

v.

CITY UNIVERSITY OF NEW YORK, Queensborough Community College, Physics Department of Queensborough Community College, Defendants.

No. 91–CV–1312 (JRB).

United States District Court, E.D. New York.

Jan. 2, 1992.

Ernest Holzberg, New York City, for plaintiff.

O. Peter Sherwood, Corp. Counsel, City of New York, New York City, for defendants; Norma A. Cote, of counsel.

## MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

## FACTS AND PROCEDURAL HISTORY

This motion for summary judgment brought by the defendants is a phase of a complicated employment discrimination lawsuit alleging violations of 42 U.S.C. § 1983, 42 U.S.C. § 2000e *et. seq.* ("Title VII"),[1] and N.Y. Executive Law § 297(9). However, the story begins in 1973 when a class action employment discrimination suit was brought in the United States District Court for the Southern District of New York against the defendants[2] in which the court found discrimination against the plaintiff class through the payment of salaries in violation of Title VII. *Melani v. Board of Higher Education*, 561 F.Supp. 769, 783 (S.D.N.Y.1983), *later proceeding Melani v. Board of Higher Educ.*, 652 F.Supp. 43 (S.D.N.Y.1986), *aff'd without op. Melani v. Board of Higher Ed.*, 814 F.2d 653 (2d Cir.1987). The plaintiff in the present suit, a physics and astronomy professor at QCC, was a member of the plaintiff class of female educational instructors in *Melani.* On September 10, 1984, a consent decree approved by the court pursuant to Fed.R.Civ.P. 23(e) settled the suit ("*Melani* consent decree"). *Melani v. Bd. of Higher Education of City of New York*, 73 Civ. 5434 (LPG) (S.D.N.Y. September 10, 1984). As a party to the *Melani* consent decree, the plaintiff received a damage award of $1780.35. In addition, she has a salary adjustment claim pending before the *Melani* Special Master.

In this case, the plaintiff claims that the defendants never complied with the terms of the *Melani* consent decree, thereby rendering it void. The plaintiff asserts both pre and post-*Melani* consent decree sex discrimination claims and seeks monetary and injunctive relief. She sets forth the following three causes of action: (1) that prior to and since September 10, 1984 (the effective date of the *Melani* consent decree), the defendants have committed and continue to commit discriminatory and retaliatory acts with respect to the plaintiff's terms and conditions of employment in violation of 42 U.S.C. § 1983 and Title VII; (2) that the defendants deliberately impose discriminatory work conditions and assignments upon the plaintiff, in violation of § 1983 and Title VII; and (3) that the defendants committed and continue to commit discriminatory employment practices in violation of N.Y. Executive Law § 297(9).

The defendants now move for summary judgment pursuant to Fed.R.Civ.P. 56(c) concerning the plaintiff's salary related discrimination and Title VII claims. In addition, the plaintiff's non-salary related discrimination claims raise a host of issues concerning the subject matter jurisdiction of this Court. While these issues were not raised by the defendants, the Court pursuant to Fed.R.Civ.P. 12(h)(3) resolves them on its own motion for the reasons set forth below. *See Republic of Philippines v. Marcos*, 806 F.2d 344, 352 (2d Cir.1986), *cert. denied New York Land Company v. Republic of Philippines*, 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987).

## DISCUSSION

Summary judgment is proper only when it appears plain from the record that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.

1. On November 21, 1991, President Bush signed into law the Civil Rights Act of 1991 which amended, *inter alia,* provisions of Title VII. Pub.L. No. 102–166; 105 Stat. 1071 (1991). None of the 1991 amendments is applicable to the Title VII issues raised in this opinion.

2. The Board of Higher Education of the City of New York, the named defendant in *Melani,* was the predecessor to the Board of Trustees of the City of New York, which is empowered under Articles 125 and 126 of N.Y. Education Law to govern and administer the City University of New York ("CUNY") system. N.Y. Education Law § 6201–310 (McKinney 1985). CUNY is a higher public education system and Queensborough Community College ("QCC") is one its community colleges.

R.Civ.P. 56(c); *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d 566, 571–73 (2d Cir.1991). The function of a court in a motion for summary judgment is to determine whether there are any genuine issues for trial while resolving all ambiguities and doubtful inferences against the moving party. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

For the sake of clarity in comprehending the defendants' motion for summary judgment, the Court treats separately the plaintiff's salary related and non-salary related discrimination claims. Consideration of the non-salary related claims, in turn, raises several issues as follows: (i) the applicability of the Eleventh Amendment; (ii) the alleged procedural default of the plaintiff under Title VII; and (iii) the subject matter jurisdictional question whether § 1983 municipal employee discrimination claims are foreclosed after a procedural default under Title VII.

### Salary Related Discrimination Claims

▆ The main issue raised by the defendants is that the *Melani* consent decree has res judicata effect over the plaintiff's salary related discrimination claims. Res judicata applies when "[a] final, valid determination on the merits is conclusive on the parties and those in privity with them as to the matter adjudged, or which should have been litigated, in another action or proceeding involving the same cause of action." 1B Moore's *Federal Practice* ¶ 0.405[3] at 190 (2d ed. 1991). The plaintiff responds that the *Melani* consent decree is not a judgment on the merits, but merely a contractual arrangement that can have no preclusive effects in subsequent lawsuits involving the same parties.

"The general rule is that a final consent decree is entitled to res judicata effect.... This is so because the entry of a consent judgment is an exercise of judicial power ... that is entitled to appropriate respect and because of the policy favoring finality of judgments." *Amalgamated Sugar Co. v. NL Industries, Inc.,* 825 F.2d 634 (2d Cir.1987), *cert. denied Rothenberg v. Amalgamated Sugar Co.,* 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987); *Wallace Clark & Co. v. Acheson Industries, Inc.,* 532 F.2d 846, 848 (2d Cir.1976), *cert. denied* 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976). This principle applies with even greater force to class action consent decrees because Fed.R.Civ.P. 23(e) requires such suits "shall not be ... compromised without the approval of the court...." Fed.R.Civ.P. 23(e); *Stella v. Kaiser,* 218 F.2d 64, 65–7 (2d Cir.1954), *cert. denied* 350 U.S. 835, 76 S.Ct. 71, 100 L.Ed. 745 (1955); 1B Moore's Federal Practice ¶ 0.409[5] at 326–27. The *Melani* consent decree was approved in 1984 by the district court under Fed.R.Civ.P. 23(e). There can be no question that the *Melani* consent decree is an adjudication having res judicata effect over related claims brought subsequently by and against parties to the original litigation.[3]

▆ The only remaining question is the extent to which the *Melani* consent decree bars the plaintiff's lawsuit. In this regard, the plain "language of a consent decree ... defines the obligations of the parties." *U.S. v. O'Rourke,* 943 F.2d 180, 187 (2d Cir.1991). The plain language of the *Melani* consent decree waives the plaintiff class's employment discrimination claims up to and including September 10, 1984. Sections VI and VII of the *Melani* consent decree awarded the plaintiff class $7.5 million and enjoined the defendant from engaging in a variety of discriminatory practices. In return, the plaintiff class agreed in Section IV(B) to

"waive any and all rights to pursue, initiate, prosecute, or commence any action ... or to file any charge of employment

---

**3.** The plaintiff alternatively argues that the *Melani* consent decree is rendered null and void because the defendants allegedly never complied with its terms. This argument is without merit. Section II of the *Melani* consent decree vested the district court with jurisdiction to enforce and implement its terms for three years after its effective date of September 10, 1984. The plaintiff could have moved the district court to enforce compliance or applied to hold the defendant in contempt for non-compliance, but did not do so at anytime. *See* Fed.R.Civ.P. 70. The plaintiff is therefore estopped from raising this claim here.

discrimination with regard to acts of commission or omission by the defendant respecting such class members regarding position or compensation, or any other term or condition of employment prior to or as of the effective date of the Decree."

Recognizing that members of the *Melani* plaintiff class were not identically situated in terms of salary schedule and rank as of September 10, 1984, the *Melani* consent decree set up in Sections VIII, IX, X, and XVIII a system for resolution of past salary discrimination claims. Section IX(B)(1)(a) dictates that any plaintiff class member claiming salary discrimination as of the decree effective date must file an adjustment claim with the *Melani* Special Master. The plaintiff filed such a claim in December, 1984 and the Special Master's decision is still pending.

All salary related discrimination claims the plaintiff alleges in this lawsuit must stem from events occurring prior to the effective date of the *Melani* consent decree. The plaintiff was hired in 1965 and received her final promotion to full professor in 1979. She is the senior member of the Physics Department of QCC and cannot be promoted any higher than the rank of full professor. At least since 1984, the plaintiff's wages have been paid on the basis of her rank through university-wide gender-neutral salary schedules stipulated by the CUNY collective bargaining agreement with the CUNY Professional Staff Congress. Even assuming *arguendo* that the plaintiff was hired in 1965 at a lower salary and promoted to full professor in 1979 at a slower rate than her male colleagues, her salary related claims necessarily turn on events occurring within that time period.

Allegedly discriminatory employment practices occurring up to and including September 10, 1984 fall squarely under the binding terms and conditions of the *Melani* consent decree. The plaintiff's salary adjustment claim with the *Melani* Special Master is her exclusive remedy for her salary related claims because these must be derived from events occurring between 1965 and 1979. Summary judgment is accordingly granted to the defendants for all salary related claims brought by the plaintiff in this lawsuit.

### Non-Salary Related Discrimination Claims

■ Summary judgment is also granted to the defendants for nonsalary related claims occurring prior to and including September 10, 1984 because of the res judicata effect of the *Melani* consent decree. As the *Melani* consent decree has no effect over plaintiff's allegations of harassment, retaliation and other forms of non-salary related discriminatory treatment occurring after September 10, 1984, these claims can stand, subject to the limitations discussed below.

(i) Applicability of the Eleventh Amendment

■ The Court raises the question whether the Eleventh Amendment of the Constitution applies to the remaining non-salary related claims brought against the defendants. The Eleventh Amendment sets forth jurisdictional limitations for suits brought against states in federal courts. U.S. Const. amend. IX. Authority is unclear whether the Eleventh Amendment raises a personal or subject matter jurisdictional defense to a suit. 1 Moore's *Federal Practice* ¶ 0.60(2.–2) at 610; 13 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3524 at 167–71 (2d ed. 1984). However, in *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 604–05 (2d Cir.1988), the court characterized the Eleventh Amendment as a limitation on subject matter jurisdiction which is the obligation of a court to resolve.[4]

---

**4.** While the Eleventh Amendment is more properly categorized as a species of subject matter jurisdiction, it can be waived by a state through "the most express language or by such overwhelming implication from the text [of a statute] as [will] leave no room for any other reasonable construction...." *Port Authority Trans-*

*Hudson Corp. v. Feeney*, 495 U.S. 299, 110 S.Ct. 1868, 1873, 109 L.Ed.2d 264 (1990) (internal quotations omitted). The voluntary general appearances of the defendants in this suit, represented by the New York City Corporation Counsel, cannot amount to a waiver by the State of New York of its Eleventh Amendment immuni-

■ Courts must "examine the degree to which the entity is supervised by the state and the entity's source of funds for satisfying judgments rendered against it...." in order to determine whether any of the defendants is an arm of the state enjoying Eleventh Amendment immunity. *Rosa R. v. Connelly*, 889 F.2d 435, 437 (2d Cir. 1989), *cert. denied* —— U.S. ——, 110 S.Ct. 3225, 110 L.Ed.2d 671 (1990). The "most significant" factor in this analysis is whether a judgment for retroactive monetary relief against a defendant would be paid out of the state treasury. *Trotman v. Palisades Interstate Part Com*, 557 F.2d 35, 38 (2d Cir.1977).

Any hypothetical recovery against defendant CUNY in this lawsuit would be paid out of the New York State treasury. N.Y. Education Law § 6205(1) states that, "[t]he state shall save harmless and indemnify members of the board of trustees [of CUNY] ... against any claim, demand, suit or judgment...." N.Y. Education Law § 6205(1) (McKinney 1985). § 6205(1) has led courts within this circuit to conclude that CUNY is an arm of New York State enjoying Eleventh Amendment immunity because the state treasury would be the source of funds for satisfying judgments.[5] *Torres v. City University of New York*, 1991 WL 143359 at *3–4, 1991 U.S. Dist. Lexis 9977 at *8–11 (S.D.N.Y.1991); *Davis v. Halpern*, 768 F.Supp. 968, 983–84 (E.D.N.Y.1991); *Ritzie v. City University of New York*, 703 F.Supp. 271, 276–77 (S.D.N.Y.1989). On the basis of these precedents and § 6205(1), the Eleventh Amendment applies to defendant CUNY.

Consequently, the 42 U.S.C. § 1983 claim against CUNY fails because it is barred by the Eleventh Amendment. *Id.; see Will v. Michigan Dept. of State Police* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The pendent N.Y. Executive Law § 297(9) claim against CUNY likewise must fail under the Eleventh Amendment unless that statute waives the state's sovereign immunity. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In *Cassells v. University Hosp. at Stony Brook*, 740 F.Supp. 143, 147–48 (E.D.N.Y.1990), the court ruled that N.Y. Executive Law § 297(9) does not expressly or by implication waive New York State's Eleventh Amendment immunity from suit in federal court. While § 297(9) authorizes suits against the state "in any court of appropriate jurisdiction, ..." such a "general consent to suit provision, standing alone ... [is] ... insufficient to waive Eleventh Amendment immunity." N.Y. Executive Law § 297(9) (McKinney 1982); *Port Authority Trans-Hudson Corp.*, 110 S.Ct. at 1873; *Cassells*, 740 F.Supp. at 148. *Cassells* is precedent for the conclusion that § 297(9) does not waive Eleventh Amendment immunity. Consequently, the Court lacks subject matter jurisdiction over the pendent state law claim against defendant CUNY and summary judgment is accordingly granted.

■ In contrast with CUNY, any recovery against defendants QCC and Physics Department of QCC would be paid out of the City of New York treasury. N.Y. Education Law § 6205(2)(e) states that, "[t]he City of New York shall indemnify and save harmless employees of the community colleges of the city university in the amount of any judgment obtained against such employees in any state or federal court...."

---

ty. The Court finds no waiver here because no New York State statute expressly authorizes the New York City Corporation Counsel to consent to suit in a federal court on behalf of New York State under these circumstances. *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464–69, 65 S.Ct. 347, 350–53, 89 L.Ed. 389 (1945); 1 Moore's *Federal Practice* ¶ 0.60[2.–2] at 611; N.Y. Education Law § 6201–310 (McKinney 1985).

**5.** This crucial question was raised in *Melani v. Board of Higher Education of the City of New York*, 17 Fair Empl. Prac. Cas. (BNA) 1618,

1627–28, 1976 WL 589 (S.D.N.Y.1976), where the district court held that the Eleventh Amendment did not apply to the defendant. *See supra* note 2. This decision was made prior to the enactment of N.Y. Education Law § 6205 on July 1, 1979. § 6205 repealed former N.Y. Education Law § 6211, which held the Board of Higher Education of the City of New York—rather than the State of New York—liable for judgments rendered against it or its employees. N.Y. Education Law § 6211 (McKinney 1972) (repealed 1979).

N.Y. Education Law § 6205(2)(e) (McKinney 1985). This most significant factor suggests that the Eleventh Amendment is inapplicable to these defendants. *Trotman,* 557 F.2d at 38.

The limited state supervisory role over these defendants further supports the finding that they are not arms of the state for Eleventh Amendment purposes. CUNY community colleges are established through local governmental sponsors including the City of New York. N.Y. Education Law § 6302 (McKinney 1985). Local sponsors are required to finance one-half of the capital costs and two-thirds of the operating costs to support their community colleges. N.Y. Education Law § 6304 (McKinney 1985). When the City of New York acts as a local sponsor, the New York City Board of Education or a ten-member board of trustees, five of whom must be appointed by local legislative bodies, administers each community college. N.Y. Education Law § 6306(3) (McKinney 1985). These community college board of trustees are granted the power to appoint college officers and staff, adopt curricula, prepare budgets, acquire property, control and manage college facilities and enter into contracts. N.Y. Education Law § 6306 (McKinney Supp.1991). The substantial local supervision over and control of defendants QCC and Physics Department of QCC, taken in connection with the City's indemnification for all judgments, indicates that the Eleventh Amendment is inapplicable to them.

(ii) Procedural Default under Title VII

 Since Title VII abrogates the Eleventh Amendment, a properly brought cause of action could exist against defendant CUNY as well as defendants QCC and Physics Department of QCC. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1975). The defendants contend that the Title VII claim fails to state a claim upon which relief can be granted because the plaintiff has not complied with its statutory requirements. 42 U.S.C. § 2000e–5 requires that a party must file a timely charge with the Equal Employment Opportunity Commission ("EEOC") or a qualified state deferral agency and obtain a right to sue letter as a condition precedent to the filing of a Title VII action. 42 U.S.C. § 2000e–5 (1988). The defendants argue that the plaintiff is in default because she did not obtain a right to sue letter prior to filing her complaint in this lawsuit.

To counter this assertion the plaintiff relies on her status as a member of the plaintiff class in *Melani.* She contends that she need not obtain a right to sue letter for this lawsuit because of those received by *Melani* plaintiff class members on November 11, 1973 as a condition precedent to the *Melani* Title VII litigation.[6] *Melani,* 17 Fair Empl. Prac. Cas. (BNA) at 1626. The plaintiff's argument is premised on the assumption that the *Melani* consent decree has no res judicata effect in order to rely on the 1973 filings. As stated above, the *Melani* consent decree has res judicata effect over the present suit for related legal actions occurring up to and including September 10, 1984. *Melani* consent decree Section IV(B)'s waiver "to pursue, initiate, prosecute or commence any action . . . . or to file any charge of employment discrimination . . . ." obviously encompasses the plaintiff class's Title VII right to sue letters obtained in 1973. The plaintiff cannot resurrect the *Melani* right to sue letters today given the clear and unambiguous waiver and settlement of them in the *Melani* consent decree.

 The only remaining question is whether a Title VII suit can be brought by the plaintiff for alleged non-salary related wrongs occuring after September 10, 1984 without prior resort to any of the administrative procedures provided by Congress.

---

6. The plaintiff also filed a complaint with the EEOC and the New York State Division of Human Rights ("NYSDHR") on December 21, 1976, which was amended on February 1, 1978. The original complaint was discontinued with her consent on June 15, 1984. The amendment to the complaint was dismissed for administrative convenience by the NYSDHR on August 16, 1984. These filings do not meet the filing requirements of Title VII because they have been terminated.

Filing a timely charge of discrimination with the EEOC or a qualified state agency is not a jurisdictional prerequisite to suit in a federal court, "but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). While *Zipes* stands for the proposition that filing with the EEOC or a state deferral agency is a statutory requirement for a Title VII suit, it does not say that a Title VII plaintiff need not comply with its provisions. *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152 n. 6, 104 S.Ct. 1723, 1726 n. 6, 80 L.Ed.2d 196 (1984) (*per curiam*); *Hladki v. Jeffrey's Consolidated, Ltd.,* 652 F.Supp. 388, 392 (E.D.N.Y.1987). Otherwise, a plaintiff would be able at his or her choosing to circumvent the Congressionally-created administrative scheme designed to facilitate voluntary compliance with or to settle disputes falling under Title VII. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1018, 39 L.Ed.2d 147 (1974).

Courts within this circuit which have considered the issue are "reluctant to hear claims that were not originally filed with the EEOC...." for these reasons. *Dennis v. Pan American World Airways, Inc.,* 746 F.Supp. 288, 290 (E.D.N.Y.1990); *Kawatra v. Medgar Evers College of City University,* 700 F.Supp. 648, 654 (E.D.N.Y. 1988); *Littman v. Firestone Tire & Rubber Co.,* 709 F.Supp. 461, 464 (S.D.N.Y. 1989); *Hladki,* 652 F.Supp. at 392. Appeals courts in other circuits addressing the same question concur with this result. *Reeves v. MCI Telecommunications Corp.,* 909 F.2d 144, 145 (5th Cir.1990); *Smith v. Kaldor,* 869 F.2d 999, 1006–07 (6th Cir. 1989); *Bullard v. Sercon Corp.,* 846 F.2d 463, 468–69 (7th Cir.1988); *see also Learned v. Bellevue,* 860 F.2d 928, 931 (9th Cir.1988), *cert. denied* 489 U.S. 1079, 109 S.Ct. 1530, 103 L.Ed.2d 835 (1989). Given this general rule, summary judgment for all defendants concerning the plaintiff's Title VII claim is granted because of her failure to pursue the administrative procedures set out in 42 U.S.C. § 2000e–5.

### (iii) Partial Foreclosure of § 1983 Claims by Title VII Procedural Default

The Court raises the issue whether it has subject matter jurisdiction over the § 1983 claims, which allege violations of the Equal Protection Clause of the Constitution, against defendants QCC and Physics Department of QCC for non-salary related events occurring after the effective date of the *Melani* consent decree. Both the plaintiff's § 1983 and failed Title VII claims are based on the same factual allegations. Having defaulted under Title VII, can the plaintiff alternatively bring nearly identical claims under § 1983 because she is a municipal employee? Curiously, only state and local government employees can attempt to plead both § 1983 and Title VII in employment discrimination suits. The Supreme Court has held that federal employees cannot invoke § 1983 in the employment discrimination context because Title VII is "an exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. GSA,* 425 U.S. 820, 829, 96 S.Ct. 1961, 1966, 48 L.Ed.2d 402 (1976).

Whether Title VII provides an exclusive remedy for employment discrimination against local or state government employees, thereby foreclosing concurrent claims under § 1983, is an unsettled question in this circuit. *Carrero v. New York City Housing Authority,* 890 F.2d 569, 575–76 (2d Cir.1989). In *Carrero,* a female employee of the New York City Housing Authority sued her employer under § 1983 for alleged violations of the Fifth and Fourteenth Amendments to the Constitution, and later amended her complaint to include Title VII claims. *Id.* at 574–75. The court *sua sponte* raised and discussed the issue of Title VII's possible foreclosure of § 1983 claims, but qualified its review for a "more comprehensive analysis, which must await a case in which it is thoroughly briefed and argued." *Id.* at 575. *Carrero* is pertinent but apparently non-binding authority over the case at bar for this reason.

*Carrero* stated that a § 1983 claim "is not precluded by a concurrent Title VII

claim, when the former is based on substantive rights distinct from Title VII." *Id.; see Vulcan Soc. of New York City Fire Dept., Inc. v. Civil Serv. Com.*, 490 F.2d 387, 390 n. 1 (2d Cir.1973). *Carrero* reached its view in part because allowing § 1983 and Title VII to stand as completely concurrent remedies could permit local and state employees to "thwart the administrative requirements of the latter's remedial scheme." *Carrero*, 890 F.2d at 576. Such plaintiffs also otherwise could be able to circumvent Title VII's limitations on damages and shorter statute of limitations. *See also Great American Fed. Sav. & Loan Assn v. Novotny*, 442 U.S. 366, 375–76, 99 S.Ct. 2345, 2350–51, 60 L.Ed.2d 957 (1979). This case presents precisely these concerns because the plaintiff cannot pursue her Title VII claim here for the reasons stated above.

*Carrero's* view that Title VII provides an exclusive remedy for rights created under Title VII, while § 1983 provides a remedy for substantive rights independent of Title VII, is the majority view of circuit courts which have squarely addressed the issue. *Polson v. Davis*, 895 F.2d 705, 710–11 (10th Cir.1990); *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1575–76 (5th Cir.1989), *cert. denied* 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990); *Foster v. Wyrick*, 823 F.2d 218, 221–22 (8th Cir.1987); *Ratliff v. Milwaukee*, 795 F.2d 612, 623–24 (7th Cir.1986); *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir.1984); *see* Stephen Shapiro, *Section 1983 Claims to Redress Discrimination in Public Employment: Are They Preempted by Title VII?*, 35 Am. U.L.Rev. 93 (1985). Other circuit courts differ and interpret Title VII even more broadly, allowing § 1983 to provide a completely concurrent remedy. *Wu v. Thomas*, 863 F.2d 1543, 1549 n. 9 (11th Cir.1989); *Roberts v. College of Desert*, 870 F.2d 1411, 1415–16 (9th Cir.1988); *Keller v. Prince George's County*, 827 F.2d 952, 955–63 (4th Cir. 1987). It appears that the majority position of other circuits, reflected in *Carrero*, is the proper interpretation of the relationship between Title VII and § 1983. This Court accordingly will apply the principle

that, "although Title VII supplements and overlaps § 1983, it remains an exclusive remedy when a state or local employer violates only Title VII." *Johnston*, 869 F.2d at 1576.

*Carrero* directs courts to ascertain whether the plaintiff has "sufficiently distinguished her § 1983 claim from her Title VII claim to permit suit on both." *Carrero*, 890 F.2d at 576. The plaintiff's first and second causes of action plead relief based both on Title VII and § 1983. They are not distinguished in the pleadings in any way. Plaintiff's counsel during oral argument said that these claims, save their procedural differences, are virtually identical.

■ However, turning to the substance of the plaintiff's non-salary related allegations, it is apparent that only a portion of them are foreclosed because they could have been remedied here exclusively by Title VII. The plaintiff alleges that QCC and Physics Department of QCC commit retaliatory acts, presumably motivated by her participation in the *Melani* lawsuit. Employer retaliation for an employee's charge or lawsuit filed under Title VII is itself a violation of Title VII. 42 U.S.C. § 2000e–3(a) (1988). Several circuit courts have held that employer retaliation in this context is a right remedied exclusively through Title VII. *Long v. Laramie County Community College Dist.*, 840 F.2d 743, 752 (10th Cir.1988), *cert. denied* 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 50 (1988); *Day*, 749 F.2d at 1205. While such a claim might be cognizable under § 1983 as a violation of the First Amendment of the Constitution under limited circumstances, *see Hoffmann v. Liberty*, 905 F.2d 229, 232–34 (8th Cir.1990), *Gray v. Lacke*, 885 F.2d 399, 410–15 (7th Cir.1989), *cert. denied* 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990), the plaintiff has not raised it in this lawsuit. Therefore, the plaintiff's retaliation claims cannot be brought under § 1983 because they could have been remedied here exclusively through Title VII. In contrast, the remainder of plaintiff's non-salary related claims, alleging that the QCC and Physics Depart-

ment of QCC deliberately harass and otherwise intentionally discriminate against her on the basis of gender, are not foreclosed. These claims of intentional discrimination are actionable under § 1983 as violations of the Equal Protection Clause and stand independently of Title VII. Compare *Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976) and *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971); *see Foster*, 823 F.2d at 220–21.

## CONCLUSION

For the reasons stated above, the Court reaches the following conclusions regarding defendants' motion: (1) all salary related discrimination claims of the plaintiff, and non-salary related discrimination claims occurring upto and including September 10, 1984, are barred by the res judicata effect of the *Melani* consent decree; (2) all § 1983 and pendent N.Y. Executive Law § 297(9) claims of the plaintiff against defendant CUNY are barred by the Eleventh Amendment; (3) all Title VII claims of the plaintiff, including retaliation, against all defendants are barred by the plaintiff's procedural default; (4) the plaintiff's remaining post-September 10, 1984 non-salary related intentional gender discrimination claims against defendants QCC and Physics Department QCC can proceed under § 1983; and (5) the plaintiff's remaining post–September 10, 1984 non-salary related discrimination claims against defendants QCC and Physics Department of QCC can proceed under N.Y. Executive Law § 297(9).

SO ORDERED.